**In re OPINION OF THE JUSTICES.**

Supreme Court of Delaware.

April 20, 1990.

To his Excellency MICHAEL N. CASTLE, Governor of Delaware:

On March 5, 1990, pursuant to the authority vested in you as Governor of the State of Delaware, you requested the opinions of the Justices of the Supreme Court concerning the proper construction of two provisions of the Delaware Constitution. 10 *Del.C.* § 141; 29 *Del.C.* § 2102. The questions presented in your letter are:

1. Does Section 10(a) of Article VIII of the Constitution require an act of the General Assembly adopted with the concurrence of three-fifths of all members of each House in order for the State to increase the environmental permit fees now charged and administered by the Department of Natural Resources and Environmental Control?

2. Does Section 11 of Article VIII of the Constitution require an act of the General Assembly adopted with the concurrence of three-fifths of all members of each House in order for the State to impose fees for environmental permits currently issued without charge by the Department of Natural Resources and Environmental Control?

The Justices accepted your request, having concluded that your letter stated a need for an opinion, due to present Constitutional duties awaiting your performance as Gov-

ernor. *Opinion of the Justices*, Del.Supr., 200 A.2d 570, 572 (1964); *In re Opinions of the Justices*, Del.Supr., 88 A.2d 128, 130–31 (1952); 10 *Del.C.* § 141(a).[1]

I

Mason E. Turner, Jr., Esquire, of Prickett, Jones, Elliott, Kristol & Schnee, and F. Michael Parkowski, Esquire, of Parkowski, Noble & Guerke, were appointed to take adversary positions with respect to each of the questions presented. 10 *Del.C.* § 141(b). Mr. Parkowski was asked to take the affirmative position. Mr. Turner was asked to take the negative position. Appearing with Mr. Turner, on behalf of the negative position, were Michael Hanrahan, Esquire, and Chandlee Johnson Kuhn, Esquire. All counsel participated *pro bono publico.* The Court is grateful to each of them for the valuable service they have rendered.

The Justices directed the attorneys to file briefs in this proceeding on an expedited basis. Oral arguments were heard on April 17, 1990. The attorneys stipulated that the following facts should be assumed as true for purposes of this proceeding.

The Delaware Department of Natural Resources and Environmental Control (hereinafter "DNREC") is responsible for implementing several environmental programs. On February 1, 1990, at a public hearing, DNREC proposed certain specified changes to so-called "permit fees" which it charges the regulated community in conjunction with its surface water, air, solid wastes, and hazardous wastes programs. The current fee schedule went into effect in 1983 and has subsequently been amended. Following adoption of the 1983 Fee Schedule the General Assembly passed Senate Concurrent Resolution No. 25 directing DNREC not to implement the fee schedules without first receiving approval by the Dela-

ware General Assembly in compliance with the Delaware Constitution. *See* Exhibit A.

The proposed fee changes include increases and decreases to existing fees and establish certain new fees. In support of the proposed changes, DNREC has developed a number of documents which, among other things, disclose in various degrees of detail DNREC's costs, current and projected, for administering the programs. The documents also estimate sources of projected funds for meeting those costs. The proposed fee changes and the aforesaid supporting documents are attached hereto as Exhibits B–G. Although the validity of the figures contained in the Exhibits has not been tested in this proceeding, they are assumed to be accurate for purposes of this proceeding and are hereby incorporated in the Statement of Facts.

The proposed surface water fees include certain fees which would, for some individual permittees, exceed DNREC's costs for administering the permits, including the costs of reviewing the applications, issuing the permits, and monitoring performance under the permits. However, the revenue generated from the entire class of permits would, under the proposed fee schedule be less than DNREC's costs for administering the entire class of permits.

Some of the proposed hazardous waste fees exceed the statutory cap established in 7 *Del.C.* Chapter 63. However, DNREC has indicated on an informal basis that it would not implement those proposed changes unless and until the statute is amended to raise the cap at least to the proposed level.

On March 14, 1990, the Secretary of DNREC, Edwin H. Clark, II, in addressing the Delaware House Natural Resources Committee, stated that DNREC

---

1. 10 *Del.C.* § 141(a) provides:

The Justices of the Supreme Court, whenever the Governor of this State may require it for public information, or to enable him to discharge the duties of his office with fidelity, may give him their opinions in writing touching the proper construction of any provision in the Con-

stitution of this State, or of the United States, or the constitutionality of any law enacted by the General Assembly of this State or the constitutionality of any proposed constitutional amendment which shall have been first agreed to by two thirds of all members elected to each house.

intends to modify the fee proposal in response to the public comment in the hearing record and expects to be reducing certain fee proposals, some significantly.

## II

In 1973, the General Assembly, through the enactment of several portions in Title 7, delegated broad authority to the Delaware Department of Natural Resources and Environmental Control ("DNREC") to carry out specifically articulated legislative purposes. The propriety of these delegations is not at issue. *Cf. Atlantis I Condominium Assoc. v. Bryson*, Del.Supr., 403 A.2d 711, 712–13 (1979). Included within those delegations was the power for DNREC to establish and collect numerous fees in conjunction with various permitting programs.

In 1980 and 1981, the Constitutional provisions which are the subject of your request, Article VIII, Section 10(a) and Article VIII, Section 11, were enacted. Section 10(a) of Article VIII of the Delaware Constitution provides:

> The effective rate of any tax levied or license fee imposed by the State may not be increased except pursuant to an act of the General Assembly adopted with the concurrence of three-fifths of all members of each House.

Section 11(a) of Article VIII of the Delaware Constitution provides:

> No tax or license fee may be imposed or levied except pursuant to an act of the General Assembly adopted with the concurrence of three-fifths of all members of each House.

The first approval of Section 10 of Article VIII, as an amendment to the Constitution, was enacted on July 12, 1978. 61 *Del.Laws*, ch. 509. On that same date, the first approval of companion amendments to Section 6 of Article VIII, establishing a balanced budget requirement under the heading "limitations upon appropriations,"

was also enacted. 61 *Del.Laws*, ch. 510. Final approval of both measures became effective on May 1, 1980. 62 *Del.Laws*, ch. 234 and 62 *Del.Laws*, ch. 236 respectively. The initial adoption of Section 11 of Article VIII, occurred on May 15, 1980.[2] 62 *Del. Laws*, ch. 242. Final approval of that provision occurred on May 28, 1981. 63 *Del. Laws*, ch. 24.

## III

■ The adoption of an amendment to the Delaware Constitution is a legislative act of almost unparalleled significance. It requires an affirmative vote by two-thirds of each House in two successive sessions of the General Assembly. Del. Const. Art. XVI § 1. Consequently, amendments to the Delaware Constitution are enacted by the General Assembly infrequently, and only after extremely careful consideration.

It is undisputed that the three amendments to Article VIII in 1980–1981 were companion provisions, which reflected a decision by two consecutive sessions of the General Assembly to exercise greater control over both the expenditures and the revenues of this State. It is also undisputed that when an amendment to the Delaware Constitution conflicts with a pre-existing statute, the amendment to the Constitution is controlling. However, the questions you have presented relate to an apparent disagreement concerning the effect that the amendments to Sections 10(a) and 11 of Article VIII had upon the prior statutes which had delegated the authority to establish various permit fees to DNREC.[3]

In support of the affirmative position, it is argued that the plain language of the 1980–1981 Constitutional amendments to Article VIII, Section 10(a) and 11, repealed any prior delegation of authority for DNREC to establish permit fees. Those favoring the affirmative position contend that the effect of these amendments was to

---

**2.** Section 11 is substantially identical to Section 10 of Article VIII, except that it addresses in the same manner the circumstance of new license fees, whereas Section 10 addresses the increases in existing license fees. Section 11 was appar-

ently adopted to correct that omission from the new Section 10.

**3.** The terms "permit fees" and "license fees" are used interchangeably. 29 *Del.C.* § 10102(5).

impose a freeze on the permit fees that DNREC had established and thereafter to require an act of the General Assembly, by a three-fifths majority vote of both Houses, in order to have any permit fees previously established by DNREC increased or any new permit fees adopted. The proponents of the negative position argue that the 1980–1981 Constitutional Amendments to Article VIII, Section 10(a) and 11 only affected permit fees adopted as an exercise of the general taxing power, and were not intended to abrogate prior statutes delegating authority to establish fees attendant to an exercise of the police power, i.e. DNREC's permit fees.[4] Support for the latter position is found in the Opinion of the Attorney General dated December 23, 1982, referred to in your March 5, 1990 letter to the Justices.

### IV

Rules of Constitutional construction are traditionally applied by the judiciary in two instances. The first is when a Constitutional provision is ambiguous. The second is if a literal application of the text would yield an absurd or illogical result, since "[e]very provision of the Constitution must be construed, whenever possible, to give effect to every other provision." *Opinion of the Justices*, 225 A.2d 481, 484 (1966). However, when the intent of the General Assembly is logically reflected by unambiguous language in an amendment to the Delaware Constitution, the language itself is controlling. In such situations, the role of the judiciary is limited to giving that language its literal effect. *Opinion of the Justices*, Del.Supr., 290 A.2d 645 (1972).

Initially, we must examine the language of Section 10(a) and 11 of Article VIII to ascertain whether it is ambiguous. From a plain reading of Sections 10(a) and 11 of Article VIII it is apparent that those Constitutional provisions do not distinguish between licensing (permit) fees which can be categorized as *de facto* taxes and fees which can be attributed to an exercise of the police power. The use of the words

"any" in Section 10(a) and "no" in Section 11(a), to modify the word "license," evidences an inclusive intent by the General Assembly to make those Constitutional provisions applicable to *all* license fees of *any* nature. We find that the language in both Section 10(a) and 11 is unambiguous.

Having concluded that the language of Sections 10(a) and 11 of Article VIII is unambiguous, we must examine that language in the context of the other provisions of the Delaware Constitution, to ascertain whether its literal application produces an illogical or absurd result. It has already been noted that Section 10(a) and 11 are two parts of a trilogy of amendments to Article VIII, which reflected a decision by two consecutive sessions of the General Assembly to exercise greater control over both the expenditures and the revenues of the State. The third part of the 1980–1981 amendments to Article VIII, set forth in Section 6, imposed upon the General Assembly, with some qualification, a requirement to balance the State budget.

In order to comply with the Constitutional mandate of Section 6 of Article VIII, it is necessary for the General Assembly to be able to account for all sources of State revenue. For budgetary purposes, State revenues are categorized as either General Funds or Special Funds. Special Funds are further subdivided into categories designated as Appropriated Special Funds (ASF) and Nonappropriated Special Funds (NSF). The permit fee revenues generated by DNREC are accounted for in the budget process as ASF revenue.

Since the total operating costs of the State are defrayed, in part, by Appropriated Special Funds, the significance of Sections 10(a) and 11 of Article VIII is apparent. The enactment of Section 10(a) and 11, at the time of adoption of the budget balancing requirements under the amendments to Section 6 of Article VIII, accomplished an essential element of the budget balancing process by providing the General Assembly with complete control over *any*

---

4. *See Conard v. State,* Del.Super., 16 A.2d 121, 124–25 (1940), *cited with approval in, Tri–State Amusement, Inc. v. State,* Del.Supr., 254 A.2d 228, 229 (1969).

**1190** 

tax or *license fee.*[5] We conclude that the plain language of Sections 10(a) and 11 produces a logical result, since it complements the provisions which were simultaneously added to Section 6 of Article VIII.

### *Conclusion*

We find that the language in the amendments to Article VIII, Section 10(a) and 11 is unambiguous. We also find that a literal application of that language is logically consistent with the contemporaneous amendments to Section 6 of Article VIII. According the language in the amendments to Sections 10(a) and 11 their plain meaning, the answers to your questions are as follows:

Question No. 1: Affirmative, without opining on the validity of any permit fees "now charged," which were established or increased subsequent to the enactment of Sections 10(a) and 11 of Article VIII.

Question No. 2: Affirmative.

The foregoing is the unanimous opinion of the Justices.

Respectfully submitted,

/s/ Andrew D. Christie
Chief Justice

/s/ Henry R. Horsey
Justice

/s/ Andrew G.T. Moore, II
Justice

/s/ Joseph T. Walsh.
Justice

/s/ Randy J. Holland
Justice

**5.** The significance of the extent to which ASF revenues influence the total budget of DNREC is demonstrated by the bar graphs which appear in the Stipulation and Statement of Facts. Under the proposed Fee Initiative, the increase in the ASF revenues exceeds the increase in receipts from the General Fund over time.